IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RHONDA REIBER, Administrator of the Estate of Chad Gesin, Deceased, <br><br> Plaintiff, <br><br> vs. <br><br> COUNTY OF GAGE, NEBRASKA, et al., <br><br> Defendants. | 4:15-CV-3023 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on the defendants' motion for summary judgment (filing 12) and motion to strike (filing 20) the plaintiff's evidence opposing summary judgment. The motion for summary judgment will be granted in part and denied in part, and the motion to strike will be denied.

## BACKGROUND

This case arises out of the death by suicide of the plaintiff's decedent, Chad Gesin, while incarcerated in the Gage County Jail. *See* filing 1-1. Gesin was arrested on July 4, 2013 after a Nebraska State Patrol officer, Neal Trantham, saw him involved in an altercation in downtown Beatrice, Nebraska. Filing 13-1 at 2. Gesin's girlfriend, Jamie King, reported to the patrolman that Gesin had assaulted her earlier in the day. Filing 13-1 at 2. King also told Trantham that she had received a text message from Gesin earlier that day threatening suicide, and a Beatrice police officer on the scene said that Gesin had stabbed himself during a previous arrest. Filing 13-1 at 3. But Trantham assessed Gesin as angry and frustrated about being arrested, rather than sad, depressed, anxious, or suicidal. Filing 13-1 at 3. Trantham had not read the text message at that point, but he reported it on the Gage County booking form. Filing 13-1 at 4, filing 13-2 at 1. When Trantham interviewed King and actually read the text message, he believed that instead of a suicide threat, the text message was a terroristic threat of a murder/suicide directed at King. Filing 13-1 at 4.

Gesin was booked for domestic assault and third degree assault. Filing 14 at 3.¹ The Gage County correctional officers who conducted the booking completed a medical questionnaire with Gesin, and performed a preliminary breath test for alcohol. Filing 14 at 3-4. Gesin's blood alcohol level was reported as .103 percent. Filing 14 at 4. The questions on the medical questionnaire relating to self-harm or suicide were answered in the negative—that is, Gesin denied ever attempting suicide or having any suicidal thoughts. Filing 14 at 4, filing 13-13 at 2.

Gesin was housed in a "single 'male maximum cell'" at about 6:10 p.m., and provided with a blanket, toilet paper, cup, and pillow. Filing 14 at 4. Gesin was also provided with a portable phone, located outside his cell, in case he needed to call someone to help him post bond. Filing 13-13 at 2. One of the correctional officers on duty performed a cell check at about 6:15, and Gesin appeared to her to be asleep in his bunk. Filing 14 at 4. At about 6:30, the other officer on duty heard what she believed was Gesin pressing the keys on the portable phone placed outside his cell. Filing 13-13 at 2; filing 14 at 5.

At about 6:45, the two officers were escorting some inmates back to their cells after their Alcoholics Anonymous meeting, and decided to conduct another cell check. Filing 14 at 5. One of the officers went to Gesin's area at about 6:50, and initially thought he was sitting on a stool leaning against his cell door, but then she saw that he was hanging from the cell bars with a dark material around his neck that proved to be his blanket. Filing 14 at 5-6. She called for assistance and radioed for an ambulance, and retrieved a "hook" knife from the booking room to remove the material from Gesin's neck. Filing 14 at 6. Gesin was unresponsive and bluish in color. Filing 14 at 6. She stepped aside for a Gage County sheriff's deputy who had arrived to assist, and he took the hook from her and cut Gesin to the floor. Filing 14 at 6. The deputy performed CPR until the emergency crew arrived to take Gesin to the

---

¹ Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1). The plaintiff in this case has instead presented a "Statement of Facts in Controversy Precluding Summary Judgment," *see* filing 19 at 2-4, which complies with neither the letter nor the intent of NECivR 56.1(b)(1). The plaintiff has, therefore, waived any objection of her own to the defendants' statement of facts by failing to properly dispute it. *See*, *Jackson v. United Parcel Serv.*, 643 F.3d 1081, 1088 (8th Cir. 2011); *Ballard v. Heineman*, 548 F.3d 1132, 1133-34 (8th Cir. 2008); *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032-33 (8th Cir. 2007); *Jones v. United Parcel Serv.*, 461 F.3d 982, 989-91 (8th Cir. 2006); *Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 724-25 (8th Cir. 2003); *compare Jenkins v. Winter*, 540 F.3d 742, 747 (8th Cir. 2008).

hospital. Filing 14 at 7. Gesin was placed on life support, but died on July 9, 2013. Filing 1-1 at 2.

The plaintiff, as administrator of Gesin's estate, sued Gage County, Gage County Sheriff Millard Gustafson in his individual capacity, and unknown employees of the Gage County Sheriff's Office in their individual capacities, alleging claims for relief based upon (1) 42 U.S.C. § 1983, (2) state law constitutional violations, and (3) state law negligence. *See* filing 1-1. The unnamed defendants remain unnamed and have not been served. Gage County and Gustafson move for summary judgment. *See* filing 12.

STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

Rule 56 also allows the Court to grant summary judgment as to some issues but not as to others. *See* Fed. R. Civ. P. 56(a). Upon doing so, the Court may "enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute," and thereby treat such a fact "as established in the case." Fed. R. Civ. P. 56(g). And after giving notice and a reasonable time to respond, the Court may take other actions dictated

by its findings—it may grant summary judgment for a nonmovant, grant the motion on grounds not raised by a party, or consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. *See* Fed. R. Civ. P. 56(f).

## DISCUSSION

For reasons that will become apparent, it will be appropriate to first address the federal constitutional claims against the only named defendants, Gage County and Gustafson. Then, the Court will address the state constitutional claims, the state negligence claims, and the remaining claims against the unnamed and unserved defendants.

### FEDERAL CLAIM AGAINST GAGE COUNTY

A municipality can be held liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). *Respondeat superior* or vicarious liability will not attach under § 1983. *City of Canton,* 489 U.S. at 385; *Johnson v. Douglas Cnty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir. 2013). But local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Johnson,* 725 F.3d at 828 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Moreover, local governments may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels. *Id.* (citing *Monell,* 436 U.S. at 690-91). Thus, the first inquiry in any case alleging municipal liability under § 1983 is whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton*, 489 U.S. at 385.

The policy or custom relied upon here is—in the light most favorable to the plaintiff—a failure to train its correctional employees regarding the risk of prisoner suicide. The Supreme Court has explained that

> it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the

- 4 -

> [municipality] is responsible, and for which the [municipality] may be held liable if it actually causes injury.

*City of Canton,* 489 U.S. at 390. In other words, to prove such a claim, a plaintiff must show that (1) the municipality's officer-training practices were inadequate; (2) the municipality was deliberately indifferent to the rights of others in adopting these training practices; and (3) the municipality's alleged training deficiencies caused the plaintiff's constitutional deprivation. *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013); *see B.A.B. v. Bd. of Educ. of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012).

But the evidence presented by the defendants establishes that Gage County's correctional officers—and in particular, those involved with Gesin's case—had been trained in such matters as behavioral health threat assessment, suicide prevention, suicide awareness, first aid, and mental health first aid; and in the County's emergency plans. Filing 13-12 at 1, 4, 9, 13, 16, 19, 22, 39, 41, 43-44, 55; filing 13-17 at 2, 17, 39, 56, 77-79, 92-96, 98; filing 13-20 at 1-2. There is no evidence that this training was insufficient. The record also contains Gage County's policy regarding cell checks for "special management inmates," including inmates who are intoxicated, have mental problems, or are suicidal: a minimum of 4 cell checks every 60 minutes. Filing 13-6 at 17. And the record contains Gage County's procedure when an attempted suicide is discovered: as relevant, it requires notifying the communications center and summoning an ambulance, obtaining backup, and providing emergency aid. Filing 13-6 at 18. There is no evidence that these policies were insufficient.

Nor is there any evidence that Gage County's officers were customarily permitted to disregard or disobey those instructions. To establish the existence of a "custom," it is necessary to establish (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation. *Johnson,* 725 F.3d at 828. There is no evidence here of a "pattern" of conduct. *See*, *Ulrich,* 715 F.3d at 1061; *Marksmeier v. Davie,* 622 F.3d 896, 902-03 (8th Cir. 2010) (citing *McGautha v. Jackson Cnty.*, 36 F.3d 53, 56-57 (8th Cir. 1994); *see also Johnson,* 725 F.3d at 828-29. And in the absence of such a pattern, it is equally difficult to infer notice of a custom to policymaking officials and deliberate indifference on their parts. *See Johnson,* 725 F.3d at 829.

In other words, even if Gage County's officers disregarded their training and official policies in this instance—and to be clear, there is scant evidence of that—there is no basis to impute that conduct to a policy or custom of Gage County. Accordingly, the plaintiff's federal claims against Gage County will be dismissed

### FEDERAL CLAIM AGAINST GUSTAFSON

The plaintiff also asserts federal constitutional claims against Gustafson in his individual capacity. But Gustafson was not personally involved in any of the underlying events. So, the plaintiff's federal claims against Gustafson *also* rely on his alleged failure to train his subordinates. *See Wever v. Lincoln Cty., Neb.*, 388 F.3d 601, 606 (8th Cir. 2004). Gustafson claims he is entitled to qualified immunity.

Qualified immunity shields public officials performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015); *see, Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson*, 555 U.S. at 231. It gives government officials breathing room to make reasonable but mistaken judgments about open legal questions and protects all but the plainly incompetent or those who knowingly violate the law. *Parker*, 777 F.3d at 979-80. "'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012).

In determining whether a government official is entitled to qualified immunity, the Court asks (1) whether the facts alleged establish a violation of a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011); *see Parker*, 777 F.3d at 980. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Messerschmidt*, 132 S. Ct. at 1245; *Pearson*, 555 U.S. at 244.

As a pretrial detainee, Gesin had a clearly established Fourteenth Amendment right to be protected from the known risks of suicide. *Wever*, 388

F.3d at 605. But there is no evidence here sufficient to establish supervisory liability on Gustafson's part. As explained above, there is nothing to suggest that Gage County's policies or customs were deficient; accordingly, there is nothing to suggest that Gustafson could have known about any deficiency.

The plaintiff argues that because "Gustafson has not yet been deposed, the Plaintiff has not had an opportunity to explore these issues. Accordingly, Defendant Gustafson's motion of summary judgment on the issue of qualified immunity must be overruled and Plaintiff must be given time to do adequate discovery." Filing 19 at 11. Fed. R. Civ. P. 56(d) permits a court to defer decision on or deny a motion for summary judgment when a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The plaintiff has not presented such an affidavit or declaration here. Furthermore, a district court's Rule 56(d) discretion is restricted when a summary judgment motion based on qualified immunity is at issue. *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 836 (8th Cir. 2015). This restriction reflects the concern that insubstantial claims against government officials be resolved prior to discovery and on summary judgment if possible. *Id.*

A party moving for a continuance under Rule 56(d) must make a good faith showing that the additional evidence discovered might rebut the opposing party's demonstration of the absence of a genuine issue of material fact. *Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006). It is not enough for a party to set forth some facts she hopes to elicit from further discovery. *Anzaldua*, 793 F.3d at 836-37. And the mere assertion that evidence supporting a party's allegation is in the opposing party's hands is insufficient to justify a denial of a summary judgment motion on Rule 56(d) grounds. *Anzaldua*, 793 F.3d at 837. A party invoking Rule 56(d) must do so in good faith by affirmatively demonstrating why she cannot respond to a movant's affidavits as otherwise required and how postponement of a ruling on the motion will enable her, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. *Anzaldua*, 793 F.3d at 837.

And here, even if the Court overlooks the absence of an affidavit or declaration and permits the plaintiff to simply invoke Rule 56(d) in her brief, she "cannot state with specificity what evidence further discovery would uncover." *See Anzaldua*, 793 F.3d at 837. The simple hope that Gustafson's deposition would uncover information is precisely the sort of "unspecific assertion [that] is insufficient under Rule 56(d)." *Anzaldua*, 793 F.3d at 837. Rule 56(d) does not condone a "fishing expedition" where a plaintiff merely

hopes to uncover some possible evidence of a constitutional violation.²
*Anzaldua*, 793 F.3d at 837.

Because the plaintiff does not have evidence sufficient to oppose summary judgment with respect to her federal claim against Gustafson, and cannot meet the requisites of Rule 56(d) in asking for further discovery, that claim will be dismissed.

### STATE CONSTITUTIONAL CLAIMS

The plaintiff attempts to assert claims arising from alleged violations of the Nebraska state constitution. But Nebraska law does not permit a direct cause of action for violation of a state constitutional provision. *See McKenna v. Julian*, 763 N.W.2d 384, 391 (Neb. 2009); *see also* Neb. Rev. Stat. § 20-148 (any person or company "except any political subdivision" shall be liable for a violation of the Nebraska constitution). The plaintiff's state constitutional claims are brought against a political subdivision and the sheriff of that political subdivision for actions within the scope of his employment, and are therefore barred by sovereign immunity in the absence of a waiver. *See McKenna*, 763 N.W.2d at 388. And the Nebraska Supreme Court has plainly held that "[the Nebraska] Legislature has not intended to waive sovereign immunity for implied causes of action under [the Nebraska] constitution." *Id.* at 391. Accordingly, the plaintiff's Nebraska state constitutional claims will be dismissed.

### STATE NEGLIGENCE CLAIMS

The plaintiff also asserts claims under Nebraska state law for negligence. The defendants argue that those claims should be dismissed because they did not owe a legal duty to Gesin. In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 913 (Neb. 2010). The defendants contend that since the Nebraska Supreme Court adopted the duty analysis from the Restatement (Third) of Torts, the scope and existence of a legal duty from jailer to prisoner is unclear. *See* filing 14 at 20-25.

The Court disagrees. In *A.W.*, the Nebraska Supreme Court endorsed the duty analysis contained in the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010). Under that analysis, foreseeability is not a factor to be considered by courts when making determinations of duty.

---

² Additionally, there is this question: discovery was permitted on issues relating to qualified immunity and sovereign immunity. *See* filing 7. The only named defendants are Gustafson and the county he is the sheriff of. It seems as if deposing Gustafson would be an obvious priority for someone in the plaintiff's position.

- 8 -

But it is not clear how that principle is being applied by the defendants here. In fact, the defendants seem to be arguing that no duty was owed to Gesin in this case because his suicide was *not* foreseeable, which is the opposite of the analysis that the Restatement (Third) provides.

The question of duty under the Restatement (Third) is a policy decision, not a decision that is based on the facts of any particular case. In *A.W.*, for instance, the Nebraska Supreme Court held that a school district had a legal duty to supervise and protect students based on its relationship with them. *A.W.*, 784 N.W.2d at 917. In doing so, the Court relied on the Restatement (Third) § 40, which *also* provides that a duty of reasonable care arises out of the relationship between "a custodian with those in its custody," if the custodian is required by law or voluntarily takes custody of another and has a superior ability to protect the other.

In other words, under the Restatement (Third) and the Nebraska Supreme Court's decision in *A.W.*, a jailer clearly owes a duty of reasonable care to a detainee. Whether that duty was breached, under the circumstances, is a question of fact that has not been raised at this point.[3] The Court will, therefore, deny the defendants' motion for summary judgment with respect to the plaintiff's state negligence claims.

## CLAIMS AGAINST UNNAMED DEFENDANTS

Left to be discussed are the plaintiff's claims against unnamed and unserved defendants. Because those defendants are neither named nor served, the motion for summary judgment filed by Gage County and Gustafson does not extend to them. So, the question is what the Court should do about them.

The Court should not be in this position. In the parties' Fed. R. Civ. P. 26(f) report, they quite plainly stipulated that the plaintiff did not anticipate a need to amend pleadings or add parties. Filing 6 at 7. The Court's progression schedule was premised on that representation. For the plaintiff to now claim that "her intent has always been to substitute the proper parties in the Gage County Sheriff's Office when their identities became known

---

[3] And even if the Court was inclined to rule in the defendants' favor on this point, the Court would hesitate to do so given the Magistrate Judge's progression order, which limited discovery to "the issues of qualified immunity and sovereign immunity." Filing 7. The defendants' attack on the sufficiency of the pleadings and evidence to establish the elements of negligence could arguably, under the Political Subdivisions Tort Claims Act, be framed in terms of "sovereign immunity"—but it could just as easily be seen as beyond the scope of the summary judgment motion contemplated by the progression order. The merits of the state law negligence claims may be revisited later in the progression schedule (if, indeed, those claims progress in federal court).

through discovery" is, to say the least, problematic. Filing 19 at 1. Nonetheless, Fed. R. Civ. P. 4(m), as applicable to this case,[4] is quite clear: the Court may dismiss defendants not served within 120 days "on motion or on its own after notice to the plaintiff." And no motion has been made, so by rule, the plaintiff is entitled to notice.

Accordingly, the Court will order the plaintiff to show cause, on or before April 29, 2016, why the remaining unnamed defendants should not be dismissed, pursuant to Rule 4(m), for failure to serve process.[5]

MOTION TO STRIKE

The defendants also filed a motion to strike (filing 20) the evidence presented by the plaintiff in opposing summary judgment.[6] Given the Court's reasoning above, the Court will deny this motion as moot. The proffered evidence was not relevant to the issues the Court found to be dispositive, so the Court need not resolve its potential admissibility at this point.

IT IS ORDERED:

1. Gage County and Gustafson's motion for summary judgment (filing 12) is granted in part and denied in part.

2. The plaintiff's federal constitutional claims against Gage County and Gustafson are dismissed.

3. The plaintiff's state constitutional claims are dismissed.

4. The plaintiff is ordered to show cause, on or before April 29, 2016, why the remaining unnamed defendants should not be dismissed, pursuant to Fed. R. Civ. P. 4(m), for failure to serve process.

---

[4] *See* General Order No. 2015-06, "In re: Amendment to Federal Rule of Civil Procedure 4(m)."

[5] Of course, the plaintiff would be entitled to a new 120-day clock for new defendants added in an amended complaint. See *Lee v. Airgas Mid-S., Inc.*, 793 F.3d 894, 898 (8th Cir. 2015). But that will require the plaintiff to show good cause. *See*, *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709 (8th Cir. 2008); *Freeman v. Busch*, 349 F.3d 582 (8th Cir. 2003).

[6] The Court notes that under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." "There is no need to make a separate motion to strike." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment.

5. The motion to strike (filing 20) is denied as moot.

Dated this 30th day of March, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge